UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Earl K. Lesniak,**

    **Plaintiff,**

-v-

    **Case No.:  2:12-cv-1041**
    **JUDGE SMITH**
    **Magistrate Judge Kemp**

**Mission Essential Personnel, LLC,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff Earl K. Lesniak initiated this action alleging that Defendant Mission Essential Personnel LLC ("MEP") breached its obligation to renew his Top Security Clearance Status while he was employed by MEP.  This matter is before the Court on Defendant MEP's Motion for Partial Dismissal of Second Amended Complaint (Doc. 23).  The Motion is fully briefed and ripe for review.  For the reasons that follow, Defendant MEP's Motion for Partial Dismissal is **GRANTED.**

### I.  BACKGROUND

This matter arises from an employment relationship between Plaintiff Earl K. Lesniak and Defendant MEP.  Plaintiff Lesniak is a resident of Fernandina Beach, Florida.  Defendant MEP is an Ohio limited liability company with its primary place of business in Franklin County, Ohio.

Lesniak is a former Counterintelligence Special Agent with the United States Air Force Office of Special Investigations, where he carried the rank of Master Sergeant and held a Top

Secret Security Clearance ("TSC").  He served twenty-two years in the United States Air Force.  He retired from the Air Force in September 2011.  (Second Am. Compl. ¶¶ 6-9).

Lesniak was contacted by an MEP recruiter, Carrie Collins, in April 2011 about a Senior Counter Intelligence Support Specialist ("Senior CI Support Specialist") position with MEP in Afghanistan.  The position was advertised as requiring a Secret security clearance, but a TSC was preferred.  (*Id.* ¶¶ 10-11).

While considering the position, Lesniak "made it clear" to the MEP Recruiter, Ms. Collins, that he required his TSC to be maintained, and was told that if he accepted the position that MEP would maintain his TSC.  From April 2011 to September 2011, Lesniak was also considering job offers from other security contractors, and allegedly forewent these offers in reliance upon MEP's representation that it would apply for, process, and maintain his TSC.  (Second Am. Compl. ¶¶ 11-20).  On August 23, 2011, MEP offered Lesniak a position as a Senior CI Support Specialist, and he began working at MEP on September 6, 2011.  (*Id.* ¶¶ 21-25).

During his new employment orientation in September 2011, Lesniak learned that he was not on MEP's list to initiate a required reinvestigation of his TSC status.  (Second Am. Compl. ¶ 26).  Lesniak asked MEP's Facility Security Officer, Todd Jones, about this and was told that his position only required a Secret clearance.  (*Id.* ¶ 27).  Lesniak inquired about the clearance with another MEP employee, Brian McCall, and was ultimately referred to Rick Hoppe of MEP who said he would speak with MEP's security office to initiate the reinvestigation of Lesniak's TSC.  (*Id.* ¶ 28-29).

Following this conversation, Jones requested additional information from Lesniak, and allegedly represented to Lesniak that if he sent the document required to process his TSC

2

renewal, MEP would process the renewal so that it would not expire.  Lesniak alleges that he provided additional information to the U.S. Office of Personnel Management, and appeared to "sign" the document electronically.  According to Lesniak, he was assured by Jones that he need not do anything else to process his TSC renewal application.  (*Id*. ¶ 30-34).

Lesniak completed his assignment as a Senior CI Support Specialist in Afghanistan in the spring of 2012.  Lesniak leaned upon his return that MEP had not processed his TSC renewal application.  Lesniak lost his TSC status, and alleges that he was not considered by MEP for new positions that he was interested in because he no longer had a TSC.  (Second Am. Compl. ¶ 41-44).  Lesniak is no longer employed by MEP.  Lesniak alleges that MEP was aware that maintaining a TSC status was valuable to security specialists like Lesniak, and that his TSC coupled with a distinguished background in the United States Air Force made him an excellent candidate for employment opportunities in the industry.  (*Id*. ¶ 45-46).

Lesniak alleges that the other security positions he considered would have renewed his TSC status, and that he is no longer eligible for positions that require a TSC.  Lesniak further alleges that he has been denied employment with several other security contractors that he would have been offered but for the lapse in his TSC, and that he has suffered damages in excess of $150,000 per year as a result.  (Second Am. Compl. ¶¶ 42-46).

On November 11, 2012, Plaintiff initiated this action asking the Court to award a judgment in favor of Plaintiff against Defendant for a minimum of $400,000.00, along with pre and post judgment interest, costs, and any other equitable relief.  (Doc. 1).  Plaintiff subsequently filed an Amended Complaint on December 6, 2012, (Doc. 4), and the Second Amended Complaint on July 29, 2013 (Doc. 22).  Plaintiff Lesniak asserts claims for:  fraud in the inducement, negligent misrepresentation, and promissory estoppel.

Defendant MEP moves for partial dismissal of the Second Amended Complaint, asserting Plaintiff has still failed to sufficiently plead claims for fraud in the inducement and negligent misrepresentation.  (Doc. 23).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.  DISCUSSION

Defendant MEP moves for partial dismissal of Plaintiff Lesniak's Second Amended Complaint, arguing that Plaintiff has failed to sufficiently plead claims for fraud in the inducement and negligent misrepresentation. MEP does not seek to dismiss the promissory estoppel claim; therefore it will remain pending.

**A.     Fraud in the Inducement Claim**

Plaintiff alleges that Defendant MEP fraudulently induced him to accept their offer of employment in exchange for the promise that it would process a renewal application for his TSC clearance. Defendant, however, argues that Plaintiff has failed to plead fraud in the inducement with the requisite particularity.

The Ohio Supreme Court has identified the following elements of fraud/fraudulent inducement claims:

5

>   (a)   a representation or, where there is a duty to disclose, concealment of a fact,
>   (b)   which is material to the transaction at hand,
>   (c)   made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
>   (d)   with the intent of misleading another into relying upon it,
>   (e)   justifiable reliance upon the representation or concealment, and
>   (f)   a resulting injury proximately caused by the reliance.

*Burr v. Board of County Comm'rs of Stark County et al.,* 23 Ohio St.3d 69, 73 (1986); *Gaines v. Preterm—Cleveland, Inc.,* 33 Ohio St.3d 54 (1987); *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169 (1984).

According to Rule 9(b) of the Federal Rules of Civil Procedure, all claims of fraud must be stated with specificity regarding "the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the misrepresentations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on fraud, and the injury resulting from the fraud." *AAA Installers v. Sears Holding Corp.*, 764 F. Supp.2d 931, 939 (S.D. Ohio 2011); *see also Power & Tel. Supply Co. v. Sun Trust Banks, Inc.,* 447 F.3d 923, 931 (6th Cir. 2006) (recognizing that plaintiffs asserting a fraud claim must "allege the time, place, and content of the alleged misrepresentations on which he or she justifiably relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud."). The threshold test is whether the complaint places the defendant on "sufficient notice of the misrepresentation," allowing the defendant to "answer, addressing in an informed way plaintiffs [sic] claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (citing *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)).

6

Lesniak alleges in his Second Amended Complaint that "MEP affirmatively represented to Mr. Lesniak that it would process a renewal application for Mr. Lesniak's TSC through email correspondence with Ms. Collins on April 21, 2011 and May 17, 2011 and telephone calls with Ms. Collins in April and May 2011; in-person conversations with Messrs. McCall and Jones, and phone conversations with Mr. Hoppe, on September 12, 13, and 14, 2011 in Columbus, Ohio." (Second Am. Compl. ¶ 49). Plaintiff further alleges that "But for MEP's promise to process Mr. Lesniak's TSC renewal application, Mr. Lesniak would not have entered into his employment contract with MEP and instead accepted other employment which would have maintained his TSC." (*Id.* ¶ 51).

Plaintiff's Second Amended Complaint attempts to cure the deficiencies noted in this Court's previous Opinion and Order, such as Plaintiff's failure to state with specificity the dates that the allegedly fraudulent statements occurred and whether the employees knew that they were making false statements with the intent of misleading another into relying upon it.

Defendant argues that the information provided by Plaintiff is still insufficient, as the specific emails identified by Plaintiff do not make any representations to Plaintiff about MEP renewing his TSC on his behalf.[1] In the April 21 email to the Plaintiff, Ms. Collins writes "[i]n terms of your TS/SCI—you actually don't necessarily need the SCI in order to be eligible for this position. As long as you have an active Secret [clearance] you would still qualify for the SR CI position." (April 21 email attached as Ex. A to Def.'s Mot.).

Similarly, in the May 17 email to Plaintiff, there is no representation by Ms. Collins that she would renew Plaintiff's TSC clearance. The only reference to any type of clearance was her

---

[1] Because Plaintiff referred to the emails in his Second Amended Complaint, the Court can rely on those without converting the motion to dismiss into a summary judgment motion. *Adkins v. Uranium Dispositions Servs.*, 2011 U.S. Dist. LEXIS 26819 *6 (S.D. Ohio Feb. 14, 2011). Plaintiff failed to attach copies of the emails to his Second Amended Complaint, but Defendant attached them as Exhibits A and B to its Motion.

7

statement that "I have almost everything else and I have already confirmed your clearance in JPAS." (May 17 email attached as Ex. B to Def.'s Mot.). Despite there being nothing in the email about TSC, Plaintiff still maintains that the email is "direct evidence of Ms. Collins' fraudulently inducing Mr. Lesniak to accept employment." (Pl.'s Response at 7). Plaintiff also asserts that "the April 21, 2011 and May 17, 2011 emails provide the context for Ms. Collins' verbal misrepresentations to Mr. Lesniak." (*Id.* at 8). However, Plaintiff is merely trying to make connections that simply aren't there. There is nothing in either email that even discusses security clearance renewal, or contains any misrepresentation, fraudulent or otherwise. To assert that the emails provide the context for Ms. Collins' verbal misrepresentations that she later made on the phone calls is disingenuous.

Plaintiff only generally alleges that Ms. Collins made assurances that his TSC would be renewed during telephone conversations and that these alleged communications from Ms. Collins fraudulently induced him to accept MEP's employment offer. But Plaintiff fails to state with any particularity or specificity the time, place or content of the alleged oral misrepresentations as required under Rule 9(b). Plaintiff generally states various dates in April and May 2011, but does not state how many telephone calls, who initiated the calls, and what the purpose of the calls was and ultimately the general topics discussed during the calls. Plaintiff admits that he "is not able to reiterate the exact words used by Ms. Collins, or able to pinpoint the exact time of day on which she promised that MEP would process Mr. Lesniak's TSC renewal." (Pl.'s Response at 8). Plaintiff's assertion that any deficiency in his pleadings should be excused until after he can conduct discovery is also disingenuous as Plaintiff should have first-hand knowledge of what was said. Any details about these alleged communications that contained fraudulent inducements are already within Plaintiff's custody, control or possession, and discovery cannot

8

be of any further help.  *See Mukamal v. BMO Harris Bank, N.A.*, 488 B.R. 758, 776 (Bankr. S.D. Fla 2013) (dismissing fraudulent inducement claims when plaintiff did not suffer any reasonable lack of knowledge sufficient to justify relaxing Rule 9(b)'s heightened pleading standard).

Plaintiff's claim for fraudulent inducement, as set forth in his Second Amended Complaint, fails to set forth the specific statements made to him by Ms. Collins, as well as the specific dates and times, and therefore is dismissed.

Plaintiff also alleges that MEP employees Brian McCall, Rick Hoppe, and Todd Jones misrepresented to Plaintiff that if he sent in the U.S. Office of Personnel Management Electronic Questionnaire for Investigation Processing ("eQip") fact sheet, then MEP would process that renewal so that it would not expire.  (Second Am. Compl. ¶¶ 30-31).  Defendant MEP argues that none of Plaintiff's allegations in the Second Amended Complaint support a claim for fraudulent inducement.  Specifically, with respect to Brian McCall, Plaintiff only alleges that he asked Mr. McCall about his security clearance while they drove together.  Mr. McCall responded by calling Mr. Hoppe and giving the phone to Plaintiff.  Plaintiff does not make any allegations that Mr. McCall made any statements, let alone any fraudulent statement, regarding renewing his TSC.

Additionally, with respect to Messrs. Hoppe and Jones, Defendant argues, and the Court agrees, that they could not have fraudulently induced Plaintiff into working at MEP because he already worked there by the time he had the conversations with them about his TSC.  Plaintiff counters that he was an at-will employee and he was free to terminate his employment with MEP at any time, with or without cause.  There is no dispute that Plaintiff was an at-will employee, but that does not negate Defendant's argument that MEP employees needed to offer him incentives to do his job.  Plaintiff asserts for the first time in his response that Messrs. McCall,

9

Hoppe, and Jones were human resources/recruiting personnel. He further states that they were "financially and professionally rewarded for getting overqualified candidates to fill positions in the field for MEP." (Second Am. Compl. ¶ 36). However, there is no reasonable explanation provided by Plaintiff for why MEP would hire overqualified employees only to have them disqualified while still working for them. Therefore, not only is there is no specific allegations to support a fraudulent inducement claim, but there is no reasonable explanation as to MEP's fraudulent intent to dupe Plaintiff into losing his TSC. Accordingly, Plaintiff's claims for fraud in the inducement is hereby dismissed. Having previously dismissed this claim without prejudice to allow Plaintiff to cure the pleading deficiencies, at this time, Plaintiff's claim is dismissed with prejudice. *See EEOC v. Ohio Edison Co.,* 7 F.3d 541, 546 (6th Cir. 1993) ("a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"). Where previous amendments were allowed, a court need not *sua sponte* allow further opportunities to amend where no further attempt to amend the complaint is sought. *Simon v. Belwith Int'l Inc.,* 3 Fed.Appx. 363, 365 (6th Cir. 2001).

**B.     Negligent Misrepresentation Claim**

In Plaintiff's previous two Complaints, he alleged a claim for negligence. However, in the briefing on the last Motion to Dismiss, Plaintiff's claim became one for negligent misrepresentation. The Court noted that raising a new claim for the first time in response to a motion to dismiss was improper and instructed Plaintiff to include a new claim in an amended complaint. Plaintiff has now pled a claim for negligent misrepresentation and Defendant argues that it must be dismissed because Plaintiff has not alleged any duty owed to him by MEP.

Under Ohio law, negligent misrepresentation occurs when:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the

10

> guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4 (Ohio 1989).

Defendant argues that Plaintiff's claim for negligent misrepresentation must be dismissed because he has not alleged any duty owed to him by MEP, specifically that Messrs. McCall, Hoppe, Jones and Collins owed any fiduciary duty to him or had any pecuniary interest in his employment. Plaintiff, however, argues that any person who makes an incorrect statement in the scope of his or her employment is liable for negligent misrepresentation regardless of their financial interest in making the misstatement. Plaintiff is incorrect. The law is clear that the misrepresenting party must have a financial interest in making the false statement—whether it be in his business, profession, employment or other transaction that is not connected to his business or employment. See Restatement (2d) of Torts, § 552 at cmt. c ("The rule stated in Subsection (1) applies only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it.").

Negligent misrepresentation claims are generally brought against professionals who are in the business of rendering opinions to others. *Picker Int'l v. Mayo Found.*, 6 F. Supp.2d 685, 689 (N.D. Ohio 1998). Lawyers, surveyors, inspectors of goods and abstractors of title are other professions that fit the Picker definition. *Premier Bus. Group, LLC v. Red Bull of N. Am., Inc.*, 2009 U.S. Dist. LEXIS 91647, at *31 (N.D. Ohio Sept. 30, 2009). The aforementioned occupations have a pecuniary interest in giving advice. The individual employees of MEP that allegedly made the misrepresentations to Plaintiff were not MEP's accountants, lawyers or consultants. Plaintiff does not allege that they were in the business of advising or rendering

11

opinions to MEP employees, nor that they had any special relationship with him. Without more, there can be no negligent misrepresentation. *See Premier*, 2009 U.S. Dist. LEXIS 91647 at *32 (Plaintiff "has alleged an ordinary business transaction, and nothing more. No special relationship was ever formed between the parties based on the conversation [the plaintiff] had with [defendant's] representative."). Further, "[n]o court in Ohio. . . has held the tort of negligent misrepresentation applicable to the employer-employee relationship." *Nichols v. Ryder Truck Rentals, Inc.*, 1994 Ohio App. LEXIS 2697 *11-12 (Ohio Ct. App. June 23, 1994).

There is no dispute that Plaintiff was not a client of the individual employees of MEP, nor did he pay them for their advice. The individual employees were just regular employees of MEP. While Plaintiff's situation is unfortunate, it appears that it was ultimately his responsibility to see that his TSC was renewed. Accordingly, Plaintiff's claim for negligent misrepresentation is hereby dismissed with prejudice.

## IV. DISPOSITION

Based on the aforementioned discussion, the Court **GRANTS** Defendant's Motion for Partial Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims for fraud in the inducement and negligent misrepresentation are dismissed with prejudice.

The Clerk shall remove Document 23 from the Court's pending motions list.

**IT IS SO ORDERED.**

/s/ *George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**